**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PINSTRIPE, INC. d/b/a ACCTKNOWLEDGE, ) <br> an Oklahoma corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MANPOWER, INC., a Wisconsin corporation; ) <br> and INTERNATIONAL BUSINESS ) <br> MACHINES CORPORATION, ) <br> a Delaware corporation, ) <br> ) <br> Defendants. ) | Case No. 07-CV-620-GKF-PJC |

<u>**OPINION AND ORDER**</u>

Before the court is the Motion of defendant International Business Machines Corporation ("IBM") to Strike Jury Demand [Docket No. 92].

Plaintiff Pinstripe, Inc. d/b/a AcctKnowledge ("AcctKnowledge") is a staffing company specializing in contract, contract-to-hire, and direct hire of accounting and finance professionals in the Tulsa, Oklahoma employment market. On or about June 15, 2004, AcctKnowledge and IBM entered into a Base Agreement under which AcctKnowledge agreed to provide contract employees to IBM for positions described in any Statement of Work ("SOW") issued pursuant to the Base Agreement. AcctKnowledge alleges that, on October 22, 2007, IBM abruptly terminated the contract and informed AcctKnowledge that IBM had decided to work with one supplier, Manpower, in the Tulsa area. AcctKnowledge filed this action on October 30, 2007, alleging that it maintained approximately 88 employees with IBM, that it had devoted substantial time and resources recruiting, assessing, placing, managing and retaining employees at IBM, in handling payroll and time off, and by providing the employees with health insurance, dental insurance, 401Ks, and paid vacation time. AcctKnowledge further alleges that, in June and July 2007, IBM falsely represented that Manpower

was merely conducting a series of work studies or tests with Manpower regarding IBM's staffing needs, and that AcctKnowledge would not be impacted by any relationship between IBM and Manpower.  AcctKnowledge alleges it reasonably relied upon IBM's representations, taking no actions to protect itself or its relationship with its employees by working to placing the employees with other companies.  AcctKnowledge further alleges that IBM intended that AcctKnowledge rely upon its representations so that, once IBM revealed its relationship with Manpower, AcctKnowledge would not have sufficient time to locate new staffing placements for its employees, and the employees would be forced to join Manpower so that IBM would experience no disruption in its staffing needs.

AcctKnowledge  brings four claims against IBM:  1) breach of a contract; 2) fraud; 3) constructive fraud, and 4) tortious interference with AcctKnowledge's prospective business relations with its employees.  AcctKnowledge has made written demand for jury trial.

Section 16.3 of the Base Agreement between IBM and Acctknowledge provides in pertinent part: "The parties expressly waive any right to a jury trial regarding disputes related to this Agreement."  Section 1.0 of the Base Agreement defines the word "Agreement" to mean "this Base Agreement and any relevant Statements of Work ("SOW"); Work Authorizations ("WA"), and other attachments or appendices specifically referenced in this Agreement."

IBM moves to strike AcctKnowledge's demand for jury trial on the grounds that contractual jury waivers are valid and enforceable, the waiver was not in inconspicuous fine print, there was no gross disparity in bargaining power, and all claims against IBM are "related to" the Agreement.

AcctKnowledge contends that the waiver is unenforceable because it was neither knowing nor voluntary, and because the waiver does not apply to the tort claims against IBM or any of the claims against Manpower.  AcctKnowledge also argues that IBM waived its right to assert the jury

trial waiver by its delay in moving to strike the jury demand.

The right to a jury trial in federal court is governed by federal law. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). Agreements waiving the right to trial by jury in a civil case are enforceable and not contrary to public policy. *Id.; American Bank and Trust Co. V. Bond Int'l Ltd.,* 2006 WL 2947088 (N.D. Okla. 2006). The waiver of a party's Seventh Amendment right to a jury trial is valid if the waiver was knowing and voluntary. *Id., citing Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 832-33 (4th Cir. 1986). This court agrees with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed. *See, e.g., Leasing Serv. Corp.*, 804 F.2d at 833; *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977); *but see K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755-56 (6th Cir. 1985) (burden is on party seeking to avoid waiver to show not voluntary and knowing). Such an approach is consistent with the fundamental premise that, because the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver. *Christenson v. Diversified Builders Inc.*, 331 F.2d 992, 994 (10th Cir. 1964).

The Court finds the jury waiver provision was not in inconspicuous fine print. The waiver was printed in same typeface as the rest of the nine page Base Agreement. The heading for the waiver was in bold lettering like all other paragraph headings in the Base Agreement. Such treatment indicates that IBM did not inconspicuously bury the waiver provision. *F.D.I.C. v. Ottawa University*, 906 F.Supp. 601, 602 (D. Kan. 1995).

The jury waiver extends to all of AcctKnowledge's claims against IBM, because all the claims, including the tort claims, are "related to" the Agreement that formed the basis for the parties' relationship. *See P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (all

claims with 'a significant relationship to the Agreement, regardless of the label attached to them, arise out of and are related to the Agreement, including a claim of tortious interference with third-party contracts); *Int'l Asset Management, Inc. v. Holt*, 487 F.Supp.2d 1274, 1288-89 (N.D. Okla. 2007) ("As a general rule, tort claims are covered by "broad" arbitration provisions, such as those extending to all claims "arising out of or relating to" the contract, so long as the tort claims "have their roots in the relationship created by the contract.")

The key issue here is whether AcctKnowledge's waiver was voluntary.  Courts have refused to uphold contractual jury waiver provisions when there was a gross disparity in bargaining power which would invalidate the jury waiver provision.  *Nat'l Equip. Rental*, 565 F.2d at 258; *Dreiling v. Peugeot Motors of Amer., Inc.*, 539 F.Supp. 402, 403 (D. Colo. 1982).   In this case, AcctKnowledge, a small local company, contracted with IBM, a large corporation.  As in *Dreiling*, IBM has presented no evidence that the waiver provision was a bargained for term of the contract, was mentioned in negotiations, or was even brought to AcctKnowledge's attention.  IBM has failed to show that AcctKnowledge had any choice but to accept the contract as written.  This gross inequality in bargaining power suggests, as in *Nat'l Equipment Rental*, that the asserted waiver was neither knowing or intentional.

This court concludes that IBM has not met its burden of proof to overcome the strong presumption in favor of a jury trial.  As a result, plaintiff's claims against both IBM and Manpower can all be tried to the jury, as contrasted with trying the claims against IBM to the court and the claims against Manpower to a jury.

**WHEREFORE**, the Motion of defendant International Business Machines Corporation ("IBM") to Strike Jury Demand [Docket No. 92] is denied.

**IT IS SO ORDERED** this 22nd day of May 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma